## HUTCHINSON v. WELLS ET AL.

1. **Appeal to Supreme Court:** TRIAL OF EQUITY CASE UPON ERRORS: STIPULATION AS TO EVIDENCE. The parties to an equity case have the right to have it reviewed in this court upon errors duly assigned, and, having so agreed, they may, to effectuate such purpose, agree upon the evidence introduced and considered by the court below, as provided in § 3170 of the Code.

2. **Mortgage Securing Successive Notes:** SALE OF NOTES TO DIFFERENT PARTIES AND SEPARATE FORECLOSURES THEREON: SALE OF MORTGAGED PREMISES TO ONE OF THE NOTE-HOLDERS: EQUITIES AND RIGHTS OF REDEMPTION AS BETWEEN THE SEVERAL PARTIES. See opinion for facts and conclusions of law.

*Appeal from Delaware Circuit Court.*

WEDNESDAY, DECEMBER 9.

*E. N. Carr*, for appellant.

*Blair & Norris*, for appellees.

SEEVERS, J.—I. This action was commenced and tried in the circuit court as an action in equity. The decree was rendered on June 25, 1884, to which the plaintiff at the time excepted. This appears of record, but no bill of exceptions was ever signed, and the trial judge has not certified the evidence up to this court as provided in section 2742 of McClain's Code. In April, 1885, the parties stipulated that " the abstract contains all the evidence offered, introduced or received on the trial of said cause,      *      *      *      and this cause shall be tried in the supreme court on errors duly assigned, and shall not be tried in said court *de novo*. And this agreement is made only for the purpose of obtaining such trial on errors assigned." Counsel for the appellees insist that we cannot look into the evidence for the purpose of determining the uncontroverted facts, for the reason that the trial judge alone, under

*Margin note:* 1. APPEAL to supreme court: trial of equity case upon errors: stipulation as to evidence.

the statute, can certify the evidence in an equity cause up to this court. For the purposes of this case this may be conceded, where a trial anew is sought and insisted on in this court; but we think the parties had the right to prepare and have this case tried in this court on errors duly assigned, and to effectuate this purpose they had the right to stipulate or agree upon the evidence introduced and considered by the circuit court, as provided in section 3170 of the Code. This having been done, we have the right, and it is our duty, to look into the evidence agreed upon and contained in the record, at least for the purpose of ascertaining the conceded or uncontroverted facts.

II. The undisputed facts we understand to be that in 1868 one Lawrence executed a mortgage on 160 acres of land to secure the payment of seven promissory notes due in 1868, 1870, 1871, 1872, 1873, 1874, and 1875. · We are not advised whether or not the first three notes have been paid. Neither party, however, claims any relief based on the ownership or non-payment of the said notes. The defendant Wells is the owner of the notes due in 1872 and 1873. He commenced an action on these notes and to foreclose the mortgage, but the record before us does not show that such action has been determined, and we deem it sufficient to say that the adjudication made in this case cannot in any manner affect Wells' rights in said action.

*2. MORTGAGE securing successive notes: sale of notes to different parties and separate foreclosures thereon: sale of mortgaged premises to one of the note-holders: equities and rights of redemption as between the several parties.*

Lawrence sold and conveyed the mortgaged premises, subject to the mortgage, to one Colton, who afterwards conveyed to Wells. The note due in 1874 became the property of George Snell, administrator, and the one due in 1875 became the property of W. W. Merritt, administrator. Both of these notes were placed in the hands of Bronson & Leroy, attorneys at law, for collection. Actions were brought thereon and to foreclose the mortgage. Separate judgments on the notes and foreclosure of the mortgage were obtained; but, as neither

plaintiff was made a party in the other action, the right of redemption in equity was not cut off by the decree in either case. Executions were issued on both decrees for foreclosure, and the mortgaged property offered for sale under both executions on the same day. Bronson & Leroy, as attorneys for the plaintiffs in execution, directed the sheriff to sell sixty acres of the mortgaged premises under the Snell foreclosure, and the remaining 100 acres under the Merritt foreclosure. The plaintiff purchased the 100 acres, and in due time the sheriff conveyed the same to him. Bronson & Leroy bid off the sixty acres in the name of one Dobbins, who failed to comply with the terms of the sale, and finally the execution was returned unsatisfied. The defendant Wells is the owner of the Snell judgment, and has caused an execution to be issued thereon, and thereunder was proceeding to sell the 100 acres which the plaintiff had purchased under the Merritt foreclosure. Thereupon this action was commenced, the object of which is to enjoin the proceedings under the execution, and compel Wells to first sell the sixty acres of land, or that the plaintiff be permitted to redeem by paying the amount due on the Snell judgment. The defendant Wells, in pleadings filed by him, asked to redeem from the sale to the plaintiff, and offered to pay the amount of the Merritt judgment, with interest and costs. The court granted the relief asked by Wells; that is, he was permitted to redeem from the plaintiff by paying the amount bid by the latter at the sheriff's sale, with ten per cent interest from that time; and, if he failed to make such redemption in sixty days, proceedings under the Wells or Snell judgment were enjoined as to the 100 acres until the sixty acres were first sold.

III. The appellees insist that Bronson & Leroy had no authority to direct that the land should be sold as above

THE SAME.

stated, and had no authority to bid off the land in the name of Dobbins, and we think the circuit court, under the evidence, could well so find, and that we are bound thereby. The appellant claims that the defendants

had full knowledge of the arrangement made by Bronson & Leroy, and that the plaintiff purchased the 100 acres under the belief that the lien under the Snell judgment had been satisfied and discharged; but, as the arrangement was made without authority, and has never been in any way ratified or adopted, it cannot prejudicially affect them.

IV.   It will be observed that both the Snell and Merritt liens were on the whole 160 acres, and that the former was the senior lien, and it remains wholly unsatisfied, and the defendant Wells, as owner, has the right to sell the whole tract of land in satisfaction of the lien; but he has no right to have his lien satisfied by the sale of the 100 acres owned by the plaintiff, nor has the latter the right to compel Wells to resort to the sixty acres owned by him, and by the sale thereof charge the lien on that tract alone. The plaintiff has no lien on the sixty acres, or interest therein. When he became the purchaser under the Merritt foreclosure, the lien was discharged; but the plaintiff, as a purchaser, has a right to redeem the 100 acres from the lien of the prior mortgage.   Merritt was not made a defendant to the foreclosure of the Snell mortgage, and by his purchase the plaintiff obtain all the rights of Merritt; but he cannot invoke the principle, where a person has a lien on two funds, and another person has a lien on only one of them, that the former can be compelled to first exhaust the fund on which he has the sole lien before he can resort to that on which there are two liens; for the reason that there was but a single fund or tract of land upon which the mortgage under which Wells claims became a lien, and by no act of his, or those under whom he claims, has such lien been in any respect changed.   It is obvious that the plaintiff cannot, by any act of his, impair the rights of Wells to the latter's prejudice; and, as Wells is now the owner of the sixty acres, it would be clearly prejudicial to him if he is compelled to look alone to that tract of land for the satisfaction of his lien.   The plaintiff insists that, as he has the right to redeem, he has the right to have

THE SAME.

the Wells lien assigned to him, and that, as the mortgagor has been released, he cannot be compelled to redeem, because, when he does so, he is entitled to the personal liability of the mortgagor, as well as the lien on the land, for the purpose of satisfying the debt. The plaintiff can only redeem the 100 acres from the Wells lien, and he is not entitled to such assignment, because he does not own, nor has he a lien on the sixty acres; and, when he does redeem his own land, he must pay the whole mortgage debt, or, at least, the amount of the Wells lien. When he does so, it may be he would be entitled to have charged on the sixty acres a *pro rata* share of the amount paid Wells. As the plaintiff is not entitled to an assignment of the lien, he is in no respect prejudiced by the release of the mortgagor.

It is urged that Wells, as the holder of the prior lien, can redeem from the plaintiff, and that this case is like *Smith v. Shay*, 62 Iowa, 119; and that, under the authority of that case, the decree of the circuit court must be sustained; but there is a material distinction between the two cases. In the cited case, the prior mortgagee had foreclosed his mortgage and had became a purchaser of the real estate under the foreclosure, and, as the junior mortgagee had not been made a party to the foreclosure, it was held that he had a right to redeem, and also that the prior mortgagee and purchaser could redeem or pay off the junior lien, and thus become the owner of the real estate discharged of both liens. The defendant Wells is not a purchaser under the mortgage, and therefore is not entitled to the rights of such a purchaser. It is true, the whole mortgaged property has been conveyed to him. But it was conveyed by Lawrence, the mortgagor, to Colton, subject to the payment of the mortgage, and Wells simply has the rights of Colton; that is, under the conveyance, in equity, he, at most, is the owner of the premises, subject to the mortgage. As prior lien-holder, Wells has the right to sell the whole mortgaged property; but clearly, we think, the

plaintiff can protect himself by the payment of so much of the debt as in equity he should pay.

As we have seen, the defendant Wells did not have the right to sell the 100 acres for the purpose of satisfying his lien. The court therefore erred in not granting such relief to the plaintiff by enjoining the sale on the execution. And it follows from what we have said that the court erred in permitting Wells to redeem from the plaintiff, for the reason that the full measure of the relief to which he is entitled is the sale of the whole of the mortgaged premises. As this case has been tried in this court as an action at law, no final decree can be entered in this court, and here we might stop; but, as we see no reason why this controversy cannot be adjudicated in this proceeding, we venture to suggest, without being bound absolutely thereby, that under the peculiar facts of this case equity demands that the Wells lien should be charged. on both the tracts of land *pro rata*, in proportion to the value of each.

REVERSED.